# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **MICKEY CAMPBELL,** **O/B/O D. C.** | * | **CIVIL ACTION NO. 07-1690** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF** **SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order supplemental security income on October 14, 2004, on behalf of her son, D.C., born February 20, 1997, based on diabetes mellitus Type I and speech and language disorder, with an onset date of June 21, 2000.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) School Records from St. March Parish covering 2003-2005 school years**. For the school years 2003-2004, claimant's grade in language 1 needed improvement. (Tr. 128). He made unsatisfactory scores in reading and science 1. (Tr. 129). His other grades, including conduct, were satisfactory.

For the 2004-2005 school year, claimant's grades were satisfactory. (Tr. 120). His teacher reported that he was an "excellent student." He was not progressing as to overall intelligibility of speech. (Tr. 121).

**(2) Teacher Questionnaire dated November 29, 2004**. As to acquiring and using information, claimant's teacher reported that he was repeating the first grade. (Tr. 133). His biggest weakness was his writing. Regarding attending and completing tasks, he did not usually have any problems in that area. (Tr. 134).

For interacting and relating with others, claimant could sometimes become emotional when things did not go his way. (Tr. 135). He might cry or get frustrated. He had trouble telling stories because of his speech problems.

As to moving about and manipulating objects, claimant get around almost as well as most students. (Tr. 136). He did get winded easily. He did not receive extra help or support in that area. He knew how to take care of himself. (Tr. 137).

The teacher noted that claimant had diabetes and asthma. (Tr. 138). When his blood sugar was low, he became tired and had reduced stamina. His blood sugar was checked during the school day almost daily. He was given insulin before he came to school, and his blood sugar was checked before lunch, unless he showed signs of low blood sugar and needed to be checked immediately.

**(3) Note from Judy Babin, RN, School Nurse, dated April 18, 2005**. Ms. Babin noted that claimant was a Type I diabetic under care of doctors at Children's Hospital in New Orleans. (Tr. 152). She stated that claimant's blood glucose was checked each day before lunch, and any time that he had signs/symptoms of low blood sugar. His blood sugars frequently dropped. He often had signs and symptoms of low blood sugar that required checking his blood sugar so that appropriate steps could be taken to prevent a serious problem.

**(4) School Activities Questionnaire and Report of Grades from Berwick Elementary**. Claimant's teacher, Gayle Adams, reported that claimant was unable to concentrate at times because of fluctuation of his blood sugar levels. (Tr. 154). She stated that claimant worked independently with supervision on occasion. She said that he responded appropriately to changes in the routine classroom environment.

Ms. Adams reported that claimant had a speech disability which hindered his participation in oral classroom situations. She stated that his peers had difficultly

understanding his speech. She observed that his hygiene was good, but that his self-care with diabetes was a major concern.

The teacher also stated that claimant's gross motor skills were performed slower than others. She noted that he had poor communication skills due to speech, expressively and receptively. He was retained in first grade, but was promoted to second and third grade. (Tr. 155).

**(5) Individualized Education Program covering 2002 to 2003 School Year**. Claimant's support needs included articulation skills, severe tongue thrust/frontal lisp, open mouth posture, unintelligible speech at times, and saliva control. (Tr. 158). He met the criteria for "Speech or Language Impairment" due to significant articulation deficits. His pre-academic skills were reported as age-appropriate.

Claimant was monitored by an LPN and an RN for his blood sugar and snacks at school. (Tr. 168). He took his insulin before breakfast and dinner daily. He was able to participate in all school activities without restrictions. (Tr. 175). He also had a nebulizer pump which was used on as-needed basis for asthma complications. (Tr. 178).

**(6) Records from Kidd Vision Center and Contact Lens Clinic dated July 28, 2003**. Claimant's vision was 20/30 in both eyes. (Tr. 186). His assessment was astigmatism/hyperopia. (Tr. 187). Keith M. Comeaux, O.D., determined that

claimant was not considered disabled on an ocular basis.

**(7) General Medical Report from Dr. Robert Blereau dated October 24, 2003**. Claimant's mother reported that claimant was hyperactive, had a short attention span, and had diabetes. (Tr. 188). He had not returned to the hospital for inpatient treatment since he had been diagnosed with diabetes. His mother gave him sliding scale insulin, and seemed to follow it fairly closely.

Claimant had asthma, for which he had an albuterol MDI and a nebulizer machine. He got asthma about once a month, for which he had never been hospitalized. His left accessory toe was excised at age 2.

Additionally, claimant had a speech impediment and talked somewhat "like a baby." Claimant's mother also reported that his behavior was very hard to control.

On examination, claimant's speech was normal and completely intelligible. His lungs were clear. Dr. Blereau's impressions were diabetes mellitus type 1, asthma, allergic conjunctivitis, possible seborrhea of the scalp in the past, speech impediment, and probable ADHD.

**(8) Speech Therapy Evaluation dated November 21, 2003**. Claimant presented with a moderate expressive/receptive disorder characterized by auditory comprehension difficulty, vocabulary, and difficulty with use of grammatical structures. (Tr. 191). He also presented with a moderate speech articulation and

phonological disorder, with speech intelligibility approximately 75% to familiar listeners and 60% to unfamiliar listeners. His fluency, voice, and pragmatics were all within functional limits.

Therapy was recommended two times weekly until long-term goals were attained. Claimant's prognosis was good, given regular attendance to therapy and parental involvement. (Tr. 192).

**(9) Childhood Disability Evaluation Form dated December 5, 2003.** Claimant was assessed for speech and language disorder, diabetes, and asthma. (Tr. 193). The examiners determined that claimant had no limitations as to acquiring and using information and attending and completing tasks; marked limitations as to interacting and relating with others, and no limitations as to moving about and manipulating objects, caring for himself, and health and physical well-being. (Tr. 195-96). The examiners noted that claimant had had no hospitalizations for asthma or diabetes that year. (Tr. 196).

**(10) Speech-Language Evaluation by National Rehab Partners dated January 4, 2005.** Claimant presented with a moderate articulation delay. (Tr. 210). He also presented with a mild to moderate language delay. His prognosis was good with consistent speech therapy and parent education. Speech therapy was recommended two times a week.

**(11) Childhood Disability Evaluation Form dated February 21, 2005**. Karen R. Speier, Ph.D. and J. Michalik, M.D. determined that claimant had a less than marked limitation as to acquiring and using information; no limitation as to attending and completing tasks; marked limitation as to interacting and relating with others; no limitations as to moving about and manipulating objects and caring for himself, and less than marked limitation as to health and physical well-being. (Tr. 213-14).

**(12) Records from Children's Hospital dated February 26, 2003 to April 12, 2005**. On July 30, 2003, claimant's hemoglobin A1C level was 9.1. (Tr. 245). It was 13.8 on October 22, 2003. (Tr. 238). On January 21, 2004, the level was 8.7. (Tr. 237). Blood sugar ranges averaged 281 on October 22, 2003, and 210 on June 18, 2004. (Tr. 229, 233).

Hemoglobin A1C was 10.1 on June 22, 2004. (Tr. 224). On November 2, 2004, claimant's blood sugar ranges averaged 244. (Tr. 221). The AIC was 8.3 on April 12, 2005, and blood sugar range average was 205. (Tr. 218-19).

**(13) Records from The Pediatric Clinic of St. Mary Parish dated June 19, 2004 to September 18, 2006**. Claimant was treated for allergies and respiratory symptoms. (Tr. 247-51). On September 18, 2006, he was sent home from school because of bad headaches and an elevated blood sugar level. (Tr. 246).

**(14) Pediatric Consultative Examination by Dr. Rohit Khanolkar dated February 8, 2007**. Claimant was seen for asthma and diabetes mellitus with frequent hypoglycemic episodes. (Tr. 252). He had had one emergency room visit for asthma in 2006. He was hospitalized in 2004 and 2006 for hypoglycemic episodes. His mother reported that he had frequent hypoglycemic episodes, up to four to five times a day.

Claimant had complaints of polyuria and polydipsia, and was currently on glucose pills and a Glucagon kit for hypoglycemic episodes. He did not realize these episodes, and needed constant monitoring. Medications included Humalog and NPH insulin, Lortab 7.5, Singulair, Patanol eye drops, Albuterol inhaler, glucose tablets, and Glucagon.

On examination, claimant's visual acuity was 20/25 with correction and 20/20 in the left eye and 20/40 in the right without. He had decreased speech intelligibility and fluency. He had no rhonchi, rales, or wheezing.

Dr. Khanolkar's assessment was asthma, mild intermittent to mild persistent, well-controlled with broncholdilators and Singulair, and diabetets mellitus, type 1, with uncontrolled blood sugar. His last hemoglobin A1C was 9/1. He noted that while claimant's mother said that claimant had four to five hypoglycemia episodes

every day, he had been admitted only twice – in 2004 and 2006 – for hypoglycemic episodes.

Claimant also had lower extremity and feet pain suggestive of claudications. He had normal pulses and normal sensation in both lower extremities. He had normal range of motion in both feet. He had poor speech intelligibility and articulation. He followed commands, and his higher cortical functions were normal.

**(14) Claimant and Claimant's Mother's Administrative Hearing Testimony**. The hearing on August 14, 2006 was continued to allow claimant to appear with a representative. (Tr. 259). At the hearing on October 20, 2006, claimant was 9 years old. (Tr. 269). His mother stated that he had diabetes, asthma, and allergies. (Tr. 272). He had to take three to four shots a day for diabetes. (Tr. 273).

Claimant's mother reported that claimant's blood sugar fluctuated. She stated that she had taken him to the hospital for diabetes about four to five months prior. (Tr. 274).

Additionally, claimant's mother testified that claimant had a speech problem. (Tr. 275). She reported that he was taking speech therapy twice a week. She also stated that he had to have asthma treatments, even at school. (Tr. 276).

Claimant's mother also stated that claimant could not go outside and play sports. (Tr. 277). She stated that if he went outside to play for five minutes, he had

to come back because his blood sugar would drop. (Tr. 278). She stated that his blood sugar jumped to 500 or 561.

**(15) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ erred: (1) in failing to find that he met the listing for juvenile diabetes mellitus, and (2) in failing to find that he had an impairment or combination of impairments that met or functionally equaled the listings.

As to the first argument, claimant argues that the ALJ should have found that he met the listing for diabetes mellitus type 1 under § 109.08 of the listings, which provides as follows:

> 109.08 Juvenile diabetes mellitus (as documented in 109.00C) requiring parenteral insulin. And one of the following, despite prescribed therapy:
>
> A. Recent, recurrent hospitalizations with acidosis; or
>
> B. Recent, recurrent episodes of hypoglycemia; or
>
> C. Growth retardation as described under the criteria in 100.02 A or B; or
>
> D. Impaired renal function as described under the criteria in 106.00ff.

20 C.F.R. Pt. 404, Subpt. Pt., App. 1, § 109.08.

Here, the record shows that claimant had juvenile diabetes mellitus. However, the evidence does not support a finding that claimant met the listing under § 109.08. While claimant's mother asserted that claimant had up to four or five hypoglycemic

episodes per day, this assertion is not supported by the medical evidence. (Tr. 214). Additionally, the record does not show that he had been hospitalized recently and recurrently for these alleged episodes as required by the listing. (Tr. 196, 252). In fact, the records reflect that he had only been hospitalized for diabetes when he was first diagnosed at age 3. (Tr. 188).

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id*. Accordingly, his argument that he meets the listing for juvenile diabetes mellitus lacks merit.

Next, claimant argues that the ALJ erred in failing to find that he had an impairment or combination of impairments that functionally met the listings.

To "functionally equal" the listings, a child's impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). These domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. § 416.926a(b)(1).

Claimant argues that the ALJ should have found that he had at least a marked limitation for the domains of "acquiring and using information" and "health and physical well-being. [rec. doc. 13, p. 9]. Specifically, he argues that the evidence shows that he could not play sports and play outside for any extended period of time; struggled in school after failing the first grade; suffers from hyperactivity and probable ADHD, and was prone to asthma attacks.

Under the regulations, a "marked" limitation is defined as an impairment which "interferes seriously" with a child's ability to independently initiate, sustain, or complete activities. § 416.926a(e)(2). A child's day-to-day functioning may be seriously limited when his impairment limits only one activity or when the interactive and cumulative effects of his impairment limit several activities. *Id*. A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning that the Social Security Administration ("SSA") would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*.

As to acquiring and using information, the ALJ found that claimant had less than marked limitation, as he had achieved passing grades for all core promotional subjects for his academic performance in the second grade, and was subsequently promoted to the third grade in 2006. (Tr. 18, 155). This finding is supported by the

Teacher Questionnaire, in which claimant's teacher found that he had only a slight problem in this domain. (Tr. 133). Additionally, the most recent Childhood Disability Evaluation Form showed that claimant had less than marked limitation as to acquiring and using information. (Tr. 213). As the ALJ's finding regarding this domain is supported by the evidence, it is entitled to deference.

As to health and physical well-being, the ALJ found that claimant had less than marked limitation, as his blood glucose was regularly monitored both at home and at school. (Tr. 21-22). Additionally, the ALJ noted that no treating physician or state medical consultant had concluded that claimant's diabetes mellitus type 1 and/or his speech/language disorder were together or singularly disabling. (Tr. 22). *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989)) ("substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled"). Thus, the ALJ's finding is entitled to deference.

Accordingly, based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed September 30, 2008, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE